United States District Court
District of Massachusetts

| | |
|---|---|
| United States of America ) | |
| ) | Case No. 19-cr-40025-TSH |
| v. ) | |
| ) | Oral argument requested |
| Kevin Jean ) | |
| ) | |

# RULE 29 SUPPLEMENTAL MOTION FOR ACQUITTAL OF DEFENDANT BASED ON SOLID GROUNDS OF MISLEADING THE GRANDJURY AND BRADY VIOLATIONS - IN DIRECT VIOLATION OF DEFENDANTS DUE PROCESS RIGHTS

**Now** into court comes the defendant, Mr. Kevin Jean appearing before the district court under the capacity of a pro-se litigant moves the district court to acquit the defendant of count one of the federal narcotics indictment on the grounds that the district court erred in allowing Special Agent Anthony J. Ventetulo to mislead the grand jury as to defendant Jeans involvement in this conspiracy, based off blatant lies and reckless disregard for the truth.

If the evidence, viewed in the light most favorable to the verdict, gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged, a reasonable jury must necessarily entertain a reasonable doubt. To establish a violation of 21 U.S.C. 846, the government must prove the following elements beyond a reasonable doubt: (1) the existence of a conspiracy, (2) the defendant's knowledge of the conspiracy, and (3) the defendants knowing and voluntary participation in the conspiracy. Under the third element, the evidence must establish that the defendant both intended to join the conspiracy and intended to effectuate the objects of the conspiracy. To establish that a defendant belonged to and participated in a conspiracy, the government must prove two kinds of intent: intent to agree and intent to commit the substantive offense. A judge may not stack

inference upon inference in order to uphold the jury's verdict. UNITED STATES V. GUZMAN-ORTIZ, 975 F.3D 43 (1ST CIR. 2020)

## Reasons for granting motion,

## May 6th, 2019

In the grand jury testimony given by agent Ventetulo, U.S. v. Melendez et al. 19-CR-40025-TSH USAO_008332, Agent Ventetulo testified that on may 6th, 2019 that; after intercepting phone calls between Junior Melendez and Angel Cordova that they believed a transaction was being set to take place. Agent Ventetulo also testified that based on these intercepted calls that surveillance was set up at 69 cutlet St.

"Q   So, based on these series of calls, did agents conduct surveillance at 69 Cutler Street, on May 6th, 2019?

A   Yes.

Q   And what, if anything, did they observe?

A   They observed a grey Charger arrive at 69 Cutler 11 Street, and a **_white male_** exit 69 Cutler Street, meet very briefly at the outside of the Charger, and, then, return into 69 Cutler Street.

Q   And how would you describe Kevin Jean's appearance physically?

A   He is a white male.

Q   So, based upon that, did you draw some inferences or conclusions as to what transaction occurred outside 69 19 Cutler Street?

A   We did.  We believe that Melendez directed Jean to exit 69 Cutler Street, meet with Cordova to obtain the cocaine, and, then, bring it back into 69 Cutler Street."

At the defendants trial WPD officer Michael Ryder testified that he was the "eye" of the surveillance at 69 cutler St. Officer Ryder testified that not only could he not identify the

individual, that it was a **_shadow figure, not a white male,_** and could not testify that the shadow figure entered the car or even made any hand to hand transaction with the vehicle. In the official "Report of the investigation U.S. v. Melendez et al. 19-CR-40025-TSH USAO_006694" details that WPD officers Peter Roberge, Stephen Mitchell, Mike Ryder, and Brendan Tivnan conducted physical surveillance of 69 cutler St. All WPD officers testified that none id or ever saw the defendant Jean at 69 cutler St. or that they ever saw any "white male interact with the grey dodge charger." This ATF Report was filed and prepared by ATF Special agent John H. McKee. Agent McKee also testified at the defendant's trial. After establishing that none of the WPD Officers ever id defendant Jean on May 6th, and that no easel notes from the "wire room" ever id defendant Jean, agent McKee was questioned as to how he involved Defendant Jean in this report to which he testified it must have been miscommunication with himself and the radios. **_Self-admitting he didn't know how he incorporated Defendant Jean in the May 6th, 2019 "Report of investigation U.S. v. Melendez et al. 19-CR-40025-TSH USAO_006694."_** This would undoubtedly be considered a **_"Falsified Police report"_** prepared by special agent John H. Mckee, resulting in prejudice to defendant Jean by grand jury testimony given by head case agent Anthony Ventetulo.

## May 8th, 2019

Pertaining to the only other date of defendant Jeans alleged involvement the government testified to doing surveillance of defendant Jean on May 8th, 2019. The following testimony transpired;

Q   On May 8th, the following day, at about twelve 4 o'clock, did you intercept a call between Melendez and Richards in which Melendez said that he would "be out there 6 soon"?

A   Yes.

Q   And Richards agreed to that?

A   Yes.

Q   So, based upon that, what steps did agents take to conduct surveillance; particularly, at 69 Cutler Street?

A   We setup surveillance at 69 Cutler Street under the assumption that someone would be leaving form 69 Cutler Street to travel to Manchester.

Q   And, in fact, did that occur?

A   It did.

Q   Can you describe what observations you made?

A   Agents observed a -- the same Nissan Altima, brown in color, leave 69 Cutler Street.  That vehicle was the one that Mack had previously used that's registered to Juan Rodriguez. That vehicle left 69 Cutler Street, and travelled to 105 Hamilton Street, which is a barber shop that is owned by Kevin Jean.  It's, also, Kevin Jean's residence. **_Based on a camera at that location_**, agents observed a white male exit the Altima, enter 105 Hamilton Street for a very brief period of time, and, then, get back into the Altima carrying a bag.

Q   Okay, and, then, it headed from that area. Correct?

A   It did.

Q   You didn't have physical surveillance out there watching that Altima that day. Correct?

A   We did not.

   Before trial Defendant Jean requested Said pole camera footage from the government through stand by counsel. Defendant Jean was informed that there was no camera footage available from 105 Hamilton St. on any date.

   A Brady Violation has three components: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it's impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued. FLORES-RIVERA V. UNITED STATES, 16 F.4TH 963.

   In the May 8th, 2019 ATF "Report of investigation U.S. v. Melendez et al. 19-CR-40025-TSH USAO_006710" Prepared by Task force Officer George F. Adams on 5/9/19; There is no report of any of the testimony given by Agent Ventetulo. **_There is no Pole camera footage at 105 Hamilton st. and there is no surveillance of defendant Jean or a white male driving the Nissan Altima anywhere in this report._** All that's left is ATF Agents Martins, Dipaolo, WPD officers, and wire room easel notes. As the court is aware ATF agent Dipaolo and Martin both

testified that they **_never did surveillance of defendant Jean at 70 Notre Dame Avenue in Manchester, New Hampshire_**. Detective Gallagher has no notes of ever doing any surveillance of defendant Jean on May 8th, 2019. There are also no easel notes of any officer placing defendant Jean on 69 cutler st, or on 70 Notre Dame Avenue.

## Overview

There is no explanation for Agent Ventetulo's grand jury testimony other than he made it up and fabricated the notes. There are simply no notes and there is no pole camera footage at all on 105 Hamilton St., located in the discovery to this case to give explanation on how the government testified to these allegations.

The defendant now swims in the same pond as **GUZMAN-ORTIZ.** Guzman-Ortiz like defendant Jean was indicted, charged, tried, and found guilty on conspiracy charges of 21 U.S.C. 846. Upon a rule 29 motion for acquittal, the District court granted defendant Guzman-Ortiz motion for acquittal reasoning that "there was no evidence that the drug paraphernalia had been used on the day in question, or that heroin seized from Cabral had been prepared and packaged that day, or that (Guzman-Ortiz) was aware of or had participated in such activities." The District Court further explained that "the only evidence of (Guzman-Ortiz's participation in (the conspiracy), or his agreement to so participate, was his response (to flee), jointly with Soto-Peguero, to the attempted and ultimately successful entry into the apartment by the agents." The District Court deemed that the evidence insufficient to meet the government's burden of proof. **GUZMAN-ORTIZ, 975 F.3D 43 (1ST CIR. 2020)**

Mere association' with conspirators or 'mere presence' during conduct that is part of the conspiracy is insufficient to establish knowing participation; the defendant must be found to have shared his co-conspirators' intent to commit the substantive offense." **UNITED STATES V. ORTIZ, 447 F.3D 28, 32-33 (1ST CIR. 2006)**

The government alleges and infers Defendant Jean's participation from phone calls and texts between Jean and codefendants but offered no testimony or direct evidence showing defendant Jean ever participated in their case.  "All reasonable inferences from evidence are to be constructed in favor of the jury verdict" (quotations omitted**) UNITED STATES V. PORTALLA, 496 F.3D 23 (1ST CIR. 2007).** However, the defendant assumes the courts would agree that all that was shown at trial attributed to defendant Jean was phone calls and texts, with no physical

evidence or surveillance on May 6th, or May 8th, 2019. That would undoubtedly be considered mere association with codefendants. To infer participation from phone calls and texts without physical surveillance, drugs, drug paraphernalia, or actual evidence on these dates, would leave the government to speculate from inferences stacked upon inferences.

Nowhere in the WPD officer's notes, Easel (wire room) notes, does May 6th, or May 8th, 2019, include physical surveillance of defendant Jean, nor did any of the trial testimony. May 6th, 2019's ATF report prepared by agent McKee is the only report that allegedly contained surveillance of defendant Jean and at trial when questioned agent McKee had no reasonable explanation as to how he incorporated Defendant Jean in it. No WPD officer's or ATF agents had in their notes or testified to ever seeing defendant Jean on May 6th, 2019. ***Again, this would undoubtedly make the "Report of the investigation U.S. v. Melendez et al. 19-CR-40025-TSH USAO_006694" a FALSIFIED POLICE REPORT.***

The same goes with May 8th, 2019. Not only are there no notes from the easel board notes, WPD officer notes, ATF agents that did surveillance of Notre Dame Avenue in New Hampshire, but their own ATF Report of Investigation Report of investigation U.S. v. Melendez et al. 19-CR-40025-TSH USAO_006710 doesn't even have Defendant Jeans name in it or any such conduct to corroborate Agent Ventetulo's grand jury testimony. The report only details activity on 69 Cutler St. There is no mention of pole camera footage at 105 Hamilton St. or of defendant Jean in New Hampshire.

As shown the grand jury testimony given by head case agent Anthony Ventetulo, his testimony was based of blatant lies and disregard for the truth. Nowhere is any of his testimony given of defendant Jean, corroborated by any evidence at all in this case or at his trial. All the government had was phone calls and text and under oath Agent Ventetulo lied to corroborate his personal beliefs. There is simply no explanation to give his testimony to. There is no physical surveillance of defendant Jean on May 6th or May 8th, 2019. There is no alleged pole camera footage at 105 Hamilton St. Multiple officers testified at the defendant's trial that they were in the wire room, which controlled and monitored the pole cameras, and none testified or wrote on the easel anything to corroborate Agent Ventetulos testimony. These are undisputed facts the government cannot argue.

Defendant Jean was indicted on charges to which a jury found him guilty on based off Agent Ventetulo misleading the grand jury as to having evidence he did not have. Inter alia

Blatant Lies. Defendant Jean was victim to prejudice by these lies because the grand jury was not free of mind to make a determination off actual evidence and in fact indicted defendant Jean based of inferences that came from these lies of evidence.

## Conclusion

Based upon the case authority of the highest Court of the land Mr. Jean request that the district court use its **Supervisory Power** when the court addresses his motion to help prevent a further miscarriage of justice to grant his acquittal or in the alternative the defendant asks the Honorable Court to deem whatsoever is just and appropriate.

Respectfully Submitted

Kevin Jean

### Certificate of Service

I, Rachel Stroup, as standby counsel, hereby certify that a true copy of the foregoing motion, which was provided to me by defendant Kevin Jean for filing, was filed through the ECF system and served on the attorney of record for each party on this date.

 /s/ Rachel Stroup
Rachel Stroup